Good morning, your honors. Theodore Boutros, representing the appellant Kira Plastinina Style, and I'd like to reserve three minutes for rebuttal with the court's permission. Sure. This court should vacate or significantly modify the preliminary injunction in this trademark case, which broadly bans Kira Plastinina, a young Russian fashion designer, from using her own name to brand and market and promote her clothing line and boutiques. In this appeal, I want to make very clear we are only challenging at this stage the portions of the injunction that restrict the use of the full name, Kira Plastinina. You're just going after the scope of the injunction. Yes, on this preliminary injunction, exactly, your honor. And to paraphrase the Second Circuit, which said in the case that prohibiting an individual from using their family's surname is to take away her identity, without which she cannot make known to those who she is going to do business with. I thought the injunction left, allowed her to use her full name to identify herself as the designer. Is that right, basically right? It does, with a very onerous disclaimer, which essentially defeats the whole purpose, your honor. So the products and the stores which were branded Kira Plastinina, that's the registered trademark, could not be used, the signs had to be taken down from the stores, the labels taken out of the clothing, and the brand and the trademark is Kira Plastinina. The court said that a disclaimer, which would have had, every time Kira Plastinina, the name was used as designer, would have had an end say, not affiliated with PacSun, which is a company she's completely unrelated to and would have really defeated the whole purpose of using the name. I think it's important this Court and courts around the country have recognized that there's a great reluctance to bar someone from using their own name in their businesses and marketing products. And I think there's really two exceptions where the courts will allow those kind of injunctions, where this Court will. The first is the classic case, the Gallo case, which is this Court's decision, where a family member breaks away from a famous company and then goes into business and either by definition there will be confusion in the marketplace because of the fame of the mark, or there's an intent to exploit the family name. In the Gallo case, there were both. The District Court there found that there was a famous name and Joseph Gallo had actually intended to capitalize on the family name. There's another strand of cases where an exception has been recognized, where someone who has no connection, no prior family or business relationship with the senior mark holder just decides brazenly to exploit a famous mark, Versace. They just start Versace.com and try to basically rip off the consumers and exploit the mark. Neither of those circumstances are here. This is a situation where Ms. Plastanina and her company had no relationship with PacSun, and there was no finding that she and her company set out to somehow confuse consumers regarding PacSun's Kira mark. So we think that this case just falls outside of that realm where courts have expressed great concern about it. So did you propose specific language to the District Court to consider? I believe at the District Court level, the counsel for Ms. Plastanina had suggested that carving out Kira, which is their spell differently, but her first name is K-I-R-A, PacSun's mark is K-I-R-R-A with two R's, that that might have been a way to carve it out. I'm not sure if they proposed, if our side proposed a specific order. I don't think so. You read everything that took place in the District Court, right? And I don't think there was a proposed order from Ms. Plastanina's side. But clearly at the argument, the proposal was made that really the key issue was giving leeway to use the full name, and that I emphasize, the trademark is Kira Plastanina. It is not Kira. And I think that's where the district judge made a legal error. By really conducting this sleek craft inquiry, the eight-factor test, and particularly similarity in strength, by looking at Kira and comparing Kira, half of the trademark, our trademark, with the Kira mark of PacSun, instead of looking at the two. And this Court's decision in the goto.com case. So how would you modify the district court's injunction today? Your Honor, I think it would be very easy to modify it. One, the paragraphs that mention the restrictions on use of the full trademark, Kira Plastanina, that would be paragraph A, paragraph B, and could just be modified to eliminate the full trademark, Kira Plastanina, in A, B, I guess C. I think it looks like they all include, the first three at least, include both names. And then I think paragraph he said you can use Plastanina. That's correct. That's just Kira Plastanina. Exactly. Because, now, the standard's not, I mean, you aren't asking us to submit or replace, supplant his judgment with ours. So I say, you know, I think, I think that's not too similar. It's not that. You've got to show us some error. Do you agree? What's the error that he committed, the lower judge? It's twofold, Your Honor. First, the fundamental legal error is that the district court, in its order, focused on only half of the trademark, Kira. But half of your trademark, but all of his trademark. Correct. But the proper legal analysis is to look at the entire mark. And, again, this Court's decision in GoTo.com clearly states that it's legal error to not consider the entirety of the mark. So I think that's legal error. It's not a factual judgment. And I think that error infected the analysis under what is really the most important prong of the Sleepcraft inquiry, which is the similarity requirement. That really has three or four pieces. One is, do the marks look alike? Here, Kira with two R's and Kira Plastinina, by no stretch of the imagination, look similar. They look very different. One is much longer. One has a distinctive Russian name in it. One doesn't. And Kira with two R's doesn't spell the first name of Kira Plastinina the same way. Second, they sound different. Kira Plastinina has a lyrical quality to it. It's much, much different than Kira, which is PacSun's trademark. The third prong of the similarity analysis looks at the meaning of the two terms. And here, Kira Plastinina is a young Russian fashion designer. Kira, as used by PacSun, is an Australian surfer beach. And PacSun sort of specializes in surfer goods. So those three factors, coupled with the overall look to see the overall impression in the market and concept in the market, I think as a matter of law, when one looks at both names in the Kira Plastinina trademark, demonstrate that there's no similarity and that it was incorrect as a matter of law and fact. Well, so Plastinina, that's a Russian name? That's correct, Your Honor. Kira is, it's a lot of, it's found its way here. There are a lot of young girls named Kira. And so did you ever get together with Pacific Sunwear and try to work something out? There have been discussions, Your Honor. One, I think- Did you present some changes that would eliminate confusion, you know, as the source? Yes, Your Honor. I believe Kira- What did you present? Essentially what I'm proposing today, which is that- You got a picture? Yes, I do, Your Honor. I have a picture that compares the two marks that can at least, if the Court can see it- I got that picture. I got that picture of what you presented. And what we presented would be that we would be able to use the Kira Plastinina mark. They would continue to use their Kira mark. And I think that the use of Kira, we were at least willing to discuss some sort of limitation on- You've got a design worked out in your color and all that? Yes, yes. And that's another reason why the marks aren't similar, Your Honor. The Kira Plastinina trademark is, and the logo is pink. It's got all kinds of designs with sort of cursive writing. You don't have a color one, do you? I don't have one with me, Your Honor. I'd be happy to submit something. I think the version in the excerpts of record are in black and white. I think your version is talking about proposed changes. The fundamental change, Your Honor, would be essentially what I'm proposing here. Again, that's something that was discussed, but the discussion has never went anywhere. But I think under Gallo, where this Court found that the injunction was too broad in that case, the Court said great caution and narrowly drawn injunctions are the rule of the day, if there can be any in this context. That's why I'm proposing here that a modification of the preliminary injunction- You say modification, but really you just want us to buy your position. You're saying a modification, but what it would be with Kira Plastinina. That's correct, Your Honor. But on the merits at trial, we contend, we continue to contend that she should be able to use her first name as well and that there was no danger of confusion. Excuse me, Russian, what would be with the Cyrillic alphabet? Is that something different? I mean, that would differentiate the mark. Do you understand what I'm saying? Yes. Sometimes I'm not clear. I understand that there may be ways to differentiate the look of the mark. Even Kira with the Cyrillic alphabet, do you know what that would look like? I don't know what that would look like, Your Honor. But it's something so that it's not – because, again, it's Kira or Kyra. And as Judge Pragerson says there, you know, we know girls. We all, I'm sure, know girls that are named Kira or Kyra. You know, it's like Kyra. And that's – it's another point, Your Honor, one that goes to the lack of danger of confusion between these two marks. There was no showing below that- Well, you used the other – you used the Cyrillic alphabet. You know, it might – see, when I first saw that name- It is confusing. I didn't know that that was a Russian name. Well, Your Honor, the trademark – the registered trademark is Kira Plastanina. And that's what we're – we believe we're – the company's entitled to use and Ms. Plastanina's entitled to use. The different logos and the different uses of Kira, I think that's a different question. Well, you could register another trademark, couldn't you, using the Cyrillic alphabet for Kira? Potentially, Your Honor. But in marketing and designing the trademark here, the company and Ms. Plastanina looked at the design and came up with a trademark that they thought would capture the brand of clothing and the brand in a way that would be effective. They did that. They registered it. There's no danger of confusion. But we do a better job on this. I trust your fashion sense, Judge Pragerson. I do. I trust your fashion sense. But looking at the- You've got to be careful. So looking at the Kira mark, the Paxsun K-I-R-R-A mark, another inquiry, and I think there was no showing that it was conceptually strong in the marketplace. It's not like Gucci or Versace, a common famous name. And in these name cases where you have someone trying to use their own name, that is a really important inquiry. It would be likely that people would hear her name and instantly think, oh, yes, there's that surfer place with two R's and get confused. They sent someone out to do a study, didn't they? No, they did not, Your Honor. That's another thing. Paxsun has argued in their briefs that Kira Plastinina didn't put on enough evidence. It was their burden to prove clearly that they were- They had no survey or evidence and confusion as to- None whatsoever, Your Honor. They had a declaration from one of their own officers, which does not show strength in the marketplace. And they had a couple blog postings from the Internet which were unauthenticated. So they did not come close to showing that there was a likelihood of confusion in the marketplace. And that's another reason why we think that the- You started off your argument by saying you're really here only challenging- The scope. The scope of the injunction, not the ultimate conclusions that the district court made. As the conclusions relate to the scope, Your Honor- Then I asked you right at the very beginning- Yes, Your Honor. Are you only challenging the scope of the injunction? In other words, the way in which he framed it? Yes, which I- Or are you arguing that he abused his discretion in granting any injunctive relief? Your Honor, on this appeal, I think the briefs are focused only on the Kira Plastinina portions of the injunction. We have raised an issue as to the proper standard for a preliminary injunction. And so to go back, yes, what I said at the beginning was in this appeal we were challenging the scope and the easy way to resolve this case is simply to find that including the full trademark, Kira Plastinina, in the injunction was legal error because there's no similarity and it goes beyond what is necessary in order to protect the interests involved. And I think- So now you're getting back to the merits. Well, I think the scope issue does relate to the merits, Your Honor, in the sense that- Well, no, he could fashion an injunction that said, okay, you can use Kira Plastinina, but, you know, it could be Kira Plastinina, designer. Your Honor, in terms of the actual language, I think, you know, there are different options here. But, again, I think rather than try to redesign the trademark and the logo, the easiest way to do it is to look at the legal inquiry here, which does go to the merits, as to similarity, the proper analysis- I don't understand your argument, also. Well, I don't want you not to understand my argument, Your Honor. I don't. First- I just don't understand your argument. Either you're challenging the merits of the district court judge granting the injunctive relief or you're saying the injunction went too far. We're arguing both, Your Honor. Well, then why didn't you say that when you started out? I was trying to make it easy, because I think that at a certain point that the two issues come together. The scope issue goes to the fact that the portion of the injunction that relates to Kira Plastinina, the full name, is legally erroneous and it's too broad. And so I think that the court should focus on that and find that those portions of the injunction should be vacated, and that would resolve the issues we presented. All right. Thank you. Thank you. May it please the Court, my name is Steve Lawson. I'm here on behalf of the Appellee Pacific Sunwear of California. When I was getting ready for today's hearing, I was a little unclear as to what I should get ready for. The bulk of the issues that had been raised on this appeal were raised in the reply brief, and we had filed a motion to strike large portions of the reply brief as well as to deem those arguments waived. Now, I didn't really hear. I heard references to those in the argument here, but not too many. I would be delighted to address the waiver issue. If Kira is that word is changed to use the acrylic design letters, then how are you going to have – how would there be confusion as to source with Kira? Well, there hasn't been any proposal that Cyrillic be – that Cyrillic be substituted. I'm asking you. I'm always trying to make a deal. Now, would there be confusion if you used the acrylic alphabet? I don't know about what the Cyrillic would look like for Kira. There's no evidence on that. If it sounded the same way, however, Your Honor, I believe we'd have a problem with that. I can't address – No, no. Yours is – wouldn't sound the same. Yours is Kira. It's Kira. Kira with the accent on the – No, no. You've got an extra R in there. But the accent is on the first syllable, Your Honor. It's pronounced Kira. Well, I don't pronounce it that way. Kira. You know, Kira. What about people looking at goods or something and seeing the tag Kira? The first thing they think of is misspelled, you know. Then it's something – I mean, for example, just to say the Cyrillic alphabet, Kira plastinina, just have the Kira in the Cyrillic alphabet, there's a differentiation and people aren't going to confuse them. The fact that there is an extra R in the word is part of what renders it arbitrary. It's not a word that's familiar. It's part of what renders it a strong mark in the United States and why, indeed, the court didn't – there wasn't any survey evidence at the preliminary injunction stage. As far as, again, what the Cyrillic would be, I don't – Well, most of the time the courts are looking for those surveys. You know, this is the first case that I've been exposed to where the – where the plaintiff didn't have some kind of a survey to show, yeah, confusion as to source. At the preliminary injunction hearing, Your Honor, actually in the briefing in the district court, the – Kira conceded that this was an arbitrary mark. It conceded that it was a strong mark. There was really very little else we needed to show with respect to show that the mark was strong. And we had something in this case that you almost never have at the preliminary injunction stage, and that was evidence of actual confusion, which the court specifically noted, specifically credited. It was from Internet chat rooms where people clearly had confused. They thought Kira Plastanina. They thought the designer was affiliated with Paxson. Almost never have that quality of evidence at the preliminary injunction stage, but we had it. Who put that in the Internet? We put it. Who put it in the Internet? Yeah. Don't know for sure, but it's probably young women who were the target market for both our goods and appellants. I mean, that's the question. In terms of evidence, there's really no foundation. Yeah. I mean, who was that? Maybe you did it. I'm not suggesting you did, but you had your kids go home and get on some chat room and say, you know, blah, blah, blah, blah, blah. Look at all this. I'm confused or whatever. It's not a physical impossibility, but the Ninth Circuit has accepted evidence of printouts of Web pages in preliminary injunction proceedings in which the declarant, in this case an attorney at my firm, said, I went to this Web site. I printed it out. It is a true and correct copy of the way this Web page appeared at this address on this date. That is acceptable evidence at the preliminary injunction stage, Your Honor. It wasn't the only evidence. Well, some might like it. Let it in. Some might not. And in this case, the district court exercised its discretion and let it in and credited it, and we made a clean sweep of the sleepcraft actors in this case. But the lower court seemed to apply the wrong standard. I mean, the winner standard is a likelihood. And that's like that. Well, I'm prepared to address that. That's one of the ones that I would say have been waived. That was not raised in the district court. It was not raised in the opening brief. So I would argue that that is entirely waived. However, if the court. Well, I mean, we're concerned about that. Okay. Then I will address that on the merits. What's interesting about this argument in the hands of appellants here is the case that they did not cite. Look what the district court did here. It found very powerfully, powerful evidence that came out very strongly in favor of likelihood of confusion and likelihood of success on the merits. That having been the case, it applied the presumption in the GoTo.com case of irreparable injury. It applied the GoTo irreparable injury standard. Now, true enough that the Winter case is now the law in this circuit, and the district court did not apply it. However, the case that the appellant did not cite, the Marlin Nutraceuticals case. We haven't had an opportunity to brief this, so I'm going to have to give the court the. . . Well, you know, there's a lot of cases out there. Well, but. . . What do you have in mind? We've got a lot of trademark cases. The Marlin Nutraceuticals case applies the GoTo presumption in the context of the Winter standard for preliminary judgment. I think one of the first trademark cases I had back in the late 60s, early 70s involved Playboy. Do you know that publication? No, Your Honor. I never heard of it. Well, no, I mean, I never had a copy because my father wouldn't approve of it. But, so some guy had a liquor store on Cahuenga Boulevard. It's still there. They call it Playboy Liquor. And so I had this case. And who's the guy that owns Playboy magazine? Hugh Hefner. Hugh Hefner. I like to settle cases. I said, well, let's bring Hubert Hefner in here and I'd like to talk to him. Well, you know, that's pretty impossible. That's like trying to get ahold of Howard Hughes. So then I said, well, what if we do this? Instead of Playboy, it was a neon light. Just take black paint or whatever you need and cover up the Y. So it's called Pla-Boy Liquors. So we settled the case. The guy is still there. You go down Cahuenga and you're looking for a bottle of scotch. Just go into Pla-Boy Liquors. It's easy to eliminate this confusion. And I think this acrylic business sounds like a pretty good idea. Your Honor, actually there's something in the record with respect to the efforts to discuss this matter between the parties. And it's found in the Matt Murphy affidavit. That's in the record at page 61. Yeah. And in that declaration, he talks about the discussions between the parties. The appellant had made a delay argument. He said, hey, they kept calling us and saying, can we talk, can we talk, can you give us some more time, can you give us some more time. We kept waiting for proposals. We didn't get them. There was no proposal in the district court or even in informal discussions here. But I would like to return, since the Court has indicated to you. Well, that would be an interesting thing to do in light of K.P. Fashion's bankruptcy. This company vanished before the district court. Okay, go ahead. I'm sorry. No, I'm listening. The district court heard argument about all of the hardship that Mr. Boutros just talked about. We've got to take the labels out. We've got to change the sign. We've got to do all of this. After the oral argument was heard below, after the hearing below, but before the court rendered its decision, K.P. Fashion, which is the U.S. company that operated these stores, declared Chapter 7 bankruptcy, went out of business overnight. Is that the defendant here? It's the defendant, but it's not the appellant. K.P. Fashion hasn't appealed that decision. The operating company that operated these companies has not appealed. The caption on the excerpts of record and the opening brief is not correct. It's correct on the reply brief, but K.P. Fashion, the company that operated these companies, has not appealed the district court decision. Only the Russian parent that is, I believe, the applicant for the trademarks is the only party before this court. Are you telling me that they're not in business anymore? I am telling you that. Does that render this moved? Well, it's an interesting question. We're still looking for that inventory. We're going to hearings out in New York where it was filed saying, what did you do with all of this infringing inventory? We don't know where it's going. So the complaint had Kira Plastina Style Limited. Correct. That's the Russian parent, if I'm not mistaken. And then K.P. Fashion Company, a Delaware corporation. Right. They owned the stores, ran the stores, and are the parties. Is the K.P. that bankruptcy was declared? K.P., yes. K.P. Fashion Company. Yes. Chapter 7. Chapter 7. Liquidation. So why isn't, as to that defendant, why isn't, I mean, there was an automatic stay and everything else. Automatic stay was lifted in order to permit us to get the order. When the court finally issued its order, there was no hardship remaining. There was not going to be any inventory. There was not going to be any sign changing, signs coming down. Those companies ceased doing business before the district court. Maybe that's what was, I guess, unknown to the district judge. Yes, it was. He noted the Chapter 7 bankruptcy in his decision. So Kira Plastina Style holds the trademarks. That's the Russian company. I believe they're the applicant for the trademark. There's one trademark registered which we are challenging before the TTAB. Oh, that's right. That's correct. I believe they own the trademarks, but they do not operate the companies, or the stores, I should say. So I see. The district court was left with no hardship at all here in terms of the parties that were before it. All it had from the defendants was a declaration with some third-party registrations, which the parties have completely ignored, as has the court, and they don't appear in this appeal at all, and a couple of paragraphs on the hardship, what a hardship it would be to change labels and bring the signs down. Well, all of that was rendered completely meaningless right after the first of the year, 2009, when all of a sudden we read in the paper that Kira Plastina had vanished overnight, and then there was the Chapter 7 filing, and we obtained a relief from the automatic stay, went back to Judge Selna, and he eventually issued the decision that has been appealed by the non-backer. So you're concerned about the leftover inventory. We do wonder where it went. We don't know. What happened to Ms. Kira Plastina? Where is she? Where is she physically? Yeah, in the courtroom. I don't know. She didn't testify. She didn't give a declaration. I've never met the young lady, so it is unknown to me where she is. Is she in the courtroom today? I don't believe so. I don't believe so. All right. So why didn't you offer to buy the inventory? We didn't want it. It doesn't mesh with the software. No, it doesn't mesh with, and besides, it's got the wrong words in it. We don't want to change the labels on it any more than they did. How much inventory is there? I don't know, Your Honor. There's only one shirt left. Well, let's count it up. There were 12 stores at the time of the hearing, 12 stores that had opened virtually overnight. See, what you could do is you could buy the inventory. You'd probably get a good price, and then you can cut the label off, and then you can donate all that to Goodwill and the Salvation Army and all the rest of it. But why should we do that? It's their clothes. No, but you're a decent company, and you get a good tax write-off. Your Honor, we are a decent company, and we are so decent that we called to the district court's attention the Gucci, the Paul Frank Sunich, and the Gallo case, and we said to the court, don't enjoin the complete use of her name. Here are some terrific models for you as to how to carve that out and to how to allow an individual to continue to use their name. We called that to the court's attention. In the trial court, in the briefing below, the Kira did not even cite Gallo, Gucci, Paul Frank. Those cases are absent from their briefing. The court only had before it what we were telling it and what the cases had to say. So the court, in my judgment and in my client's judgment, was well within the scope of its discretion to carve it out the way it did, and even with respect to the disclaimer, this has been used for a long time, and not just in family cases and not just in former employee cases. We finally learned what's really going on in the real world here. So your time's up. As a matter of fact, you owe us 13 seconds. Let me hear from this gentleman here. I appreciate it. Thank you. It was very helpful. Thank you, Your Honor. So have you got the inventory in your garage? I don't personally have it, Your Honor. What is left of the inventory? But, yeah, let me give the court. Just tell me, what is left of the inventory? The bankrupt company ultimately sold inventory and the rights to the trademark to a company called Pink Square, which is operating in the same spot called, and the store is called Plastinina. So for now, just the last name is being used. My client is still, it's the global company. It's the Russian entity. Kira Plastinina has stores all over Russia and in Europe and in other places. So it's a vibrant business, but it has to do business in the United States differently. This is the only place that is barred from using the full name Kira Plastinina. So this is not moot. It's very active. The store is still being run by a new company, which through the bankruptcy proceeding. Why didn't you tell us all this when you first got up there? I, Your Honor, because I. You forgot. I didn't forget, Your Honor. But my client owns the trademark and has significant interest, irrespective of all those issues. And on the irreparable harm point, Your Honor, and the hardships, it was significant hardships when this injunction came down. And Pink Square, the company that's now running the store, has to abide by the injunction. That's why it's only using Plastinina as the name of the store. So I think the counsel mentioned that they brought all these cases to the district court's decision, but they did not bring the Winter case to the district court's decision. They brought the preliminary injunction motion. Both sides should have raised the issue clearly before the district court. But it's an equitable issue and a preliminary injunction. And it's been applied. The wrong legal standard has been applied. So we would ask the court to. But where's the inventory now? The inventory is being sold around, at least in the United States, it's being sold. Change the labels. Yes. It's being sold. What does the label say? Plastinina. And it's being sold in the store here on Beverly Boulevard. But after having had to change all the labels and make separate labels for the goods sold in the United States. But the brand, as it has been marketed throughout the world, is Cura Plastinina. How did they get all that stuff out of the bankruptcy? Through purchasing the rights and through the bankruptcy court. And then the trademark was licensed to the extent it's usable, the Plastinina portion of it, to Pink Square. So it's still functioning. The injunction is still imposing hardships on a daily basis. And we believe the court should. And the same entity owns the new company? Yes. So Pink Square is related to my client through corporate relationships. And so the injunction is still imposing these hardships. The one thing I wanted to make clear also that there was no evidence whatsoever of any harm, not one lost customer to PacSun and its brand whatsoever. It was purely presumed irreparable injury. Well, I think we've got it. Thank you.
judges: Mahan, Pregerson, Paez